IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| RODNEY SMALLS, ) | |
| ) | |
| Plaintiff, ) | No. 2:21-cv-03713-DCN-MHC |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| CHARLESTON COUNTY SHERIFF'S ) | |
| OFFICE; JAMES CARTER, III, *in his* ) | |
| *official capacity*; and ALLAN R. ) | |
| WILLIAMS, *in his individual capacity*; ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This matter is before the court on Magistrate Judge Molly H. Cherry's report and recommendation ("R&R"), ECF No. 57, that the court grant defendants James Carter, III, ("Deputy Carter"), Allan R. Williams ("Capt. Williams") and Charleston County Sheriff's Office's (the "Sheriff's Office") (together, "defendants") motion for summary judgment as to all federal claims, ECF No. 49, and motion for qualified immunity, ECF No. 48, be granted such that only the state law claims against the Sheriff's Office remain. ECF No. 57, R&R. The magistrate judge further recommends that the court decline to exercise supplemental jurisdiction over the state law claims and dismiss those claims without prejudice. Id. For the reasons set forth below, the court adopts the R&R in full.

## I. BACKGROUND

The R&R ably recites the facts as stated in the complaint, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

1

This case arises from an alleged use of excessive force during plaintiff Rodney Smalls's ("Smalls") flight and subsequent arrest on November 14, 2019.[1] On that date, Deputy Carter was patrolling in his vehicle with his K-9. As he approached I-526 from I-26, he observed a burgundy 2019 GMC Terrain driving at a very high rate of speed on I-526. Smalls was the driver of the vehicle.

When Deputy Carter got onto I-526 westbound, Smalls slowed the vehicle and crossed the white fog line. Deputy Carter got behind the GMC to monitor and determine whether Smalls might be impaired. When Deputy Carter did this, Smalls changed lanes without using a proper turn signal. Deputy Carter thereafter activated his blue lights. Instead of pulling over, Smalls sped up and led Deputy Carter on a pursuit. Smalls later indicated that he was trying to evade the deputies because he had been using drugs that night, there were drugs in the GMC, and he did not want to go back to jail.

The pursuit continued off the interstate. However, soon after leaving the interstate the front passenger jumped out of the moving vehicle and fled on foot. Deputy Carter remained behind the vehicle until Smalls turned into a driveway and jumped from the vehicle to flee on foot. Smalls ran through yards and jumped over at least one fence that was five or six feet tall. Deputy Carter ultimately located Small on the porch of a house, in the corner of an alcove near the door of the residence. The body worn camera shows that Deputy Carter came onto the porch with his flashlight in hand. According to

---

[1] The court dispenses with citations throughout the background section, instead noting that the facts are pulled from the complaint, ECF No. 1, and the R&R, ECF No. 57. The court also notes that the R&R drew its facts from numerous sources, including: the incident report, ECF No. 48-3; the Dash Cam Video, ECF No. 48-4; footage from the Body Worn Camera Video, ECF No. 48-5; the Smalls deposition, ECF No. 48-6; and the Deputy Carter deposition, ECF No. 48-7.

Smalls, when he saw Deputy Carter walking toward him, he lost consciousness and does not remember anything until he was being taken out of the hospital on his way to jail. ECF No. 48-6 at 6, Smalls Dep. 32:7–12; 39:23–40:1.

Because it was pre-dawn and the lighting poor, the body worn camera does not clearly show how Smalls was positioned on the porch. Smalls testified that his back was against the wall, but he does not remember if he was sitting or crouching. Smalls Dep. 44:24–45:6. Deputy Carter testified that Smalls was crouched in a stance, such that Deputy Carter had concerns that Smalls might try to flee. ECF No. 48-7, Carter Dep. 9:15–10:10. The poor lighting also makes it difficult to see what happens immediately after Deputy Carter ran onto the porch. At his deposition, Smalls agreed that he did not immediately stand up or put his hands in the air nor did he lay down and put his hands out to his sides. Smalls Dep. 45:8–23. According to Deputy Carter, he lowered his shoulder and physically forced Smalls into the wall, pinning Smalls against the side of the house. Carter Dep. 8:16–10:7. Deputy Carter commanded Smalls to show or give Deputy Carter his hands, but Smalls did not. According to Deputy Carter, Smalls then "went limp," and Deputy Carter released him. ECF No. 50-2, Carter Dep. 34:14–35:3. Deputy Carter testified that he radioed to dispatch that he had Smalls and the body worn camera briefly shows Smalls on the ground, leaning slightly against the wall, with the audio portion of the footage confirming Deputy Carter's radio to dispatch. Smalls has no memory of these events and offers no testimony regarding them.

The incident report from November 14, 2019, indicates that Deputy Carter rolled Smalls over onto his stomach so that Deputy Carter could handcuff him. However, as Deputy Carter attempted to handcuff Smalls, Smalls began to resist and struggle,

3

prompting Deputy Carter to give additional commands for Smalls's hand which eventually allowed Deputy Carter to get Smalls handcuffed. The sound of handcuffs opening or closing can be heard on the audio portion of the body worn camera footage, as well as Deputy Carter's commands to Smalls to give him his hands and to stop fighting. For the remainder of the relevant time, Deputy Carter instructed Smalls several times to stand up, but Smalls was unable to do so. Deputy Carter radioed for assistance to get Smalls off the porch.

Smalls was taken to the hospital where the treating physician noted that Smalls did not "provide any meaningful history regarding why he is in the hospital." ECF No. 50-1 at 2. The doctor diagnosed Smalls with bilateral zygomatic arch fractures in his face. Id. at 6. The physician noted that the injuries did not require acute inpatient general surgery admission; however, he indicated that Smalls should have the fractures reduced surgically later, and that, at the time, Smalls was "not consentable due to intoxication." Id. at 10.

The complaint alleges that Capt. Williams was either the Captain of the Internal Affairs Department of the Charleston County Sheriff's Office or Deputy Carter's direct supervisor prior to being promoted to the captain position. Compl. ¶ 8. However, Smalls does not specify any actions by Capt. Williams that evening, instead focusing on his purported omissions and failure to take action to report Deputy Carter for purported infractions. Id. ¶¶ 24–30. Capt. Williams was Captain of Internal Affairs in 2018 and during the relevant period of 2019. ECF No. 53-9, Williams Dep. 10:6–9; ECF No. 49-9, Williams Dep. 22:19–23:6. Deputy Carter was not in Capt. Williams's chain of command, meaning he was not Deputy Carter's supervisor. ECF No. 49-9, Williams

Dep. 42:20–43:5. The complaint's allegations of reports to internal affairs regarding Deputy Carter's purported infractions were not signed by nor copied to Capt. Williams. ECF Nos. 53-6, 53-8 at 3. Capt. Williams's responsibilities included reviewing Internal Affairs investigations to determine completeness but did not include discipline or recommendations to discipline employees. ECF No. 49-9, Williams Dep. 28:24–30:7.

On November 11, 2021, Smalls filed the complaint alleging violations of 42 U.S.C. § 1983 and state tort claims. ECF No. 1, Compl. ¶¶ 34–45. All pretrial proceedings in this case were referred to Magistrate Judge Cherry pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2) (D.S.C.). On September 20, 2022, Deputy Carter filed a motion for judgment as a matter of law.[2] ECF No. 48. Smalls responded in opposition on October 4, 2022, ECF No. 50, to which Deputy Carter replied on October 11, 2022, ECF No. 52. On September 26, 2022, defendants filed a motion for summary judgment. ECF No. 49. On October 11, 2022, Smalls responded in opposition, ECF No. 53, to which defendants replied on October 18, 2022, ECF No. 54. On May 28, 2023, Magistrate Judge Cherry issued a report and recommendation that defendants' motion for summary judgment be granted as to all federal claims and that Deputy Carter's motion for qualified immunity be granted. ECF No. 57, R&R. On April 6, 2023, the Sheriff's Office objected to the R&R. ECF No. 59. On April 19, 2023, Smalls replied to the objections, ECF No. 59. As such, the motion has been fully briefed and is ripe for review.

---

[2] The magistrate judge construed Deputy Carter's motion for judgment as a matter of law to be a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, on the basis of qualified immunity. R&R at 1 n.1. This court similarly construes the motion to be one for summary judgment.

5

## II. STANDARD

### A. Order on R&R

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1). The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made. Id.

However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted). Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings." Greene v. Quest Diagnostics Clinical Lab'ys, Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted). When a party's objections are directed to strictly legal issues "and no factual issues are challenged, de novo review of the record may be dispensed with." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982) (citation omitted). Analogously, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Id.

B. **Summary Judgment**

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

First, the R&R recommended granting the motion for summary judgment for Smalls's excessive use of force by Deputy Carter in violation of the Fourth Amendment claim because Deputy Carter's actions in pushing Smalls against the wall to prevent him from fleeing and to handcuff him were reasonable and were not excessive based on the totality of the circumstances. R&R at 7–12. The magistrate judge further recommended that Deputy Carter is entitled to qualified immunity on Smalls's Fourth Amendment

Claim because Deputy Carter did not violate Smalls's constitutional rights. Id. at 12–13. Second, the R&R concluded that since Smalls has not established any constitutional injury, he cannot establish a claim for supervisory liability against Capt. Williams. Id. In any event, even if the court were to reach the merits of the supervisory liability claim, the magistrate judge noted that there was no evidence before the court that Capt. Williams had actual or constructive knowledge that any of his subordinates, including Deputy Carter, were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Smalls nor that Capt. Williams was deliberately indifferent to or tacitly authorized the alleged offensive practices. Id. at 13–14. In other words, Smalls has not provided any evidence to support a § 1983 claim against Captain Williams for supervisory liability. Id. Third, the R&R recommended that upon the dismissal of all Smalls's federal claims, the court should decline to exercise jurisdiction over his remaining state law tort claims and should dismiss them without prejudice. R&R at 14–16.

The Sheriff's Office filed objections to the R&R, specifically the magistrate judge's recommendation that the court decline to exercise jurisdiction over the state tort claims and that the court dismiss those claims without prejudice. ECF No. 58. Smalls filed a reply to contend that the R&R properly recommended that the court decline to exercise jurisdiction and stated that "[t]he current status of the case is that all federal claims have been dismissed," indicating that he does not object to the magistrate judge's recommendation of their dismissal. ECF No. 59 at 1.

Neither party objects to the R&R's recommendation to grant summary judgment as to the § 1983 claims, and in the absence of a timely filed, specific objection, the court

reviews the R&R only for clear error.  Diamond, 416 F.3d at 315.  A review of the record for clear error indicates that the R&R accurately summarized this case and the applicable law.  Accordingly, the court adopts the magistrate judge's R&R as to Counts 1 and 2, and grants defendants' motion for summary judgment on those claims.  Additionally, the R&R recommends finding all claims against individual defendants—namely, those brought against Deputy Carter and Capt. Williams—barred by qualified immunity.  Neither party objects to this conclusion.  The court finds no clear error and grants summary judgment on Smalls' claims against Deputy Carter and Capt. Williams on the basis of qualified immunity.  Finally, the Sheriff's Office objects to the magistrate judge's recommendation that the court decline to exercise jurisdiction over the remaining state tort claims as brought against the Sheriff's Office.  ECF No. 58.  In concrete terms, then, the court reviews de novo the magistrate judge's recommendation that the court decline to exercise jurisdiction over the remaining state law claims and the parties' objections to such a recommendation in turn.  See R&R, ECF Nos. 58, 59.

      The state tort law claims at issue are for negligence and gross negligence/grossly negligent retention/supervision against the Sheriff's Office.  Compl. ¶¶ 43–45.  The magistrate judge recommended that consideration of Smalls's state law claims ought to be undertaken in state court.  The R&R noted that the dismissal would serve fairness and judicial economy by giving Smalls at least thirty days from the dismissal to file his state law claims in state court.  See 28 U.S.C. § 1367(d) (tolling applicable limitations period for a claim that is dismissed under § 1367 while the claim is pending and for thirty days thereafter unless state law provides for longer).

The Sheriff's Office argues that the court should exercise supplemental jurisdiction over the state law tort claims for numerous reasons.  First, Smalls chose to file this matter in federal court.  ECF No. 58 at 2.  Second, Smalls has named the Sheriff's Office as a defendant for violations of only state law claims, and the Sheriff's Office has defended those claims exclusively in federal court to date.  Id.  Third, this court has handled all motions and overseen discovery—which was conducted pursuant to the Federal Rules of Civil Procedure—to its conclusion.  Id.  Fourth, this court is most well acquainted with the facts as it handled the matter the first time it was filed in state court and removed to federal court, Smalls v. Charleston Cnty. Sheriff's Off., Case No. 2:20-cv-2743-DCN,[3] and through to the instant motion for summary judgment and pending report and recommendation.  Id.  Fifth, the Sheriff's Office posits that should the court decline to exercise jurisdiction, a series of events may occur, such as appeal of this order, which would cause undue delay in those claims' resolution.  Id.  Sixth, the court can fully assess the issues in the state law claims based upon the report and recommendation as well as the information provided in the Sheriff's Office memorandum in support of summary judgment, Smalls's opposition to summary judgment, and the Sheriff's Office's reply.  Id. at 3.  Thus, the Sheriff's Office asks the court to exercise its discretion and retain jurisdiction over the state law claims brought pursuant to supplemental jurisdiction.

---

[3] That case was litigated until Smalls voluntarily dismissed it and then refiled this matter directly in the federal court.  Smalls v. Charleston Cnty. Sheriff's Off., 2021 WL 11505159 (D.S.C. June 1, 2021) (granting the magistrate judge's report and recommendation that Smalls's motion for voluntary dismissal without prejudice be granted pursuant to Fed. R. Civ. P. 41(a)(2)).

In reply, Smalls emphasizes that the procedural posture—namely, that the case has not yet gone to trial—weighs in favor of the court declining to exercise jurisdiction. ECF No. 59 at 1–2. Moreover, Smalls argues that the legal questions of the state tort claims are not automatically disposed of by the court's conclusions regarding the constitutional claims brought pursuant to § 1983. Id. Thus, they can be handled by a state court since the issues presented are dependent on state tort law and state statutory principles as implicated by the South Carolina Tort Claims Act ("SCTCA"). Id.

"[D]istrict courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). Additionally, district courts should consider "manipulative tactics" as another non-dispositive factor. Carnegie-Mellon Univ. 484 U.S. at 357. "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Id. at 350. In addition, Fourth Circuit precedent "evince[s] a strong preference that state law issues be left to state courts." Arrington v. City of Raleigh, 369 F. App'x 420, 423 (4th Cir. 2010) (unpublished); see also Waybright v. Frederick Cnty., 528 F.3d 199, 209 (4th Cir. 2008),

cert. denied, 555 U.S. 1069 ("With all its federal questions gone, there may be the authority to keep [this case] in federal court under 28 U.S.C. §§ 1367(a) and 1441(c) (2000), but there is no good reason to do so.").

The court agrees with the magistrate judge and declines to exercise supplemental jurisdiction over the remaining state law claims as brought against the Sheriff's Office. The Sheriff's Office's arguments do not move the needle in light of clear Fourth Circuit preference that state law issues be left to state courts.[4] See Arrington, 369 F. App'x at 423. This court has not reached the merits of the state law claims and therefore finds that convenience and comity weigh in favor of reserving those state law issues for state court. See ECF Nos. 49, 53, 54. As such, the court declines to exercise jurisdiction over the state law claims brought against the Sheriff's Office and dismisses those claims without prejudice. Smalls may file his state law claims within thirty days of this court's dismissal. See 28 U.S.C. § 1367(d).

## IV.   CONCLUSION

For the foregoing reasons the court **ADOPTS** the report and recommendation, **GRANTS** the motion for summary judgment, and **DECLINES** to exercise supplemental jurisdiction over the remaining state law claims.

---

[4] The court's opinion as to the merits of Smalls's § 1983 claims is not necessarily dispositive of the state law claims and the Sheriff's Office's concerns as to unreasonable delay are, to date, unfounded and may be properly raised in the state court should Smalls file his case in that forum. See ECF No. 58 at 2. Additionally, the parties may preserve and reuse the arguments put forth in the motion for summary judgment, response in opposition, and reply which concern the state law claims should Smalls choose to file in state court. See ECF Nos. 49, 53, 54. The Sheriff's Office's preference that the pending state law claims in this case be disposed of by this court do not outweigh the interests of comity whereby issues arising under South Carolina law should, where possible, be resolved by state courts. See id. Thus, the court finds the Sheriff's Office's arguments unpersuasive.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 6, 2023**

**Charleston, South Carolina**